The opinion of the Court was delivered by
Tilghman C. J.
This is an action on the case, brought by James Rutter against The Chesnut Hill & Spring House Turnpike Company, for an injury done to the plaintiff’s land and tanyard, in consequence of certain piers erected by the defendants, on each side of a stream of water, by which the stream was .obstructed and thrown back, and overflowed .the plaintiff’s land.
The defendants below, who are plaintiffs in . error, rely off two objections. 1. That a corporation is not suable in this kind of action. 2. That the declaration does not state a good cause of action, even if the defendants were liable to an action in this form.
1. Corporations have lately been so multiplied in the United States, that they stand a very prominent part, in. the *16 business, of the country. It has, therefore, been necessary to consider, with great attention^ their nature, and their rights, both as to suing and being sued. And as it would be extremely . , . . inconvenient, that they should do wrong without being amenable to justice, the inclination of the Court has been, to hold t*16111 responsible. ’ There was a time, when'it seems to have been supposed, that, they could make no contract, but by writing under their common seal. The reason assigned was, that, being incorporeal, and consequently incapable of speaking, it was impossible that they should enter into a parol contract. But upon reflection, this reason has been thought insufficient ; for if pursued to its Sail extent, it would prove, that a corporation could not act*all. It has no hand to affix a seal, and must therefore emplSy an agent for the purpose. But this agent must receive his authority previous to his affixing the seal, It is necessary, therefore, that the. corporation should have the power to act without seal, so far as respects the appointment of a person to affix the seal. Now if it can appoint an agent without seal, for one purpose, there is no reason why it may not for- another. Accordingly, in the case of The King v. Biggs, 3 P. Whis. 419, on a special verdict in a case of capital felony, it was held, that the Bank of England might, without seal, authorise a person to sign notes in its behalf. And it was decided by the Supreme Court of the United States, in the case of The Bank of Columbia v. Patterson’s administrators, 7 Cranch, 299, that a corporation may, without seal, enter into a contract, express, or even implied. In the words of Judge Story, by whom the opinion of the Court was delivered, “ when- á corporation is acting “ within the scope of the legitimate purpose of its institution^ “ all parol contracts made by its authorised agents, are express promises of the corporation, and all duties imposed' si on them by law, and all benefits conferred, at their request, “raise implied promises, for which an action lies.” By this decision, I consider the law as settled. It does, indeed, seem to have been the opinion of this Court, in the ease of Breckbill v. The Lancaster Turnpike Company,.3 Dali. 496, that an action of assumpsit would not lie against a corporation. But the law had not been at that time fully considered, and I may say, that our late brother Ye atés, .who was on the bench when Breckbill v. The Lancaster Turnpike Copipany was decided, was satisfied as to the propriety of acquiescing in the *17 authority of The Bank of Columbia v. Patterson's administrators.
But it is objected that the present action is not on contract but on tort, and a very refined argument is brought forward, to prove that a corporation cannot be guilty of a tort. A corporation, say the defendant’s counsel, is a mere creature of law, and can act only as authorised by its charter. But the charter does not authorise it to do' wrong, and therefore it can do no wrong. The argument is fallacious in its principles, and mischievous in its consequences, as it tends to introduce actual wrongs and ideal remedies; for a turnpike company may do great injury, by means of labourers who have no property to answer the damages recovered against them. It is much more reasonable to say, that when a corporation is authorised by law to make a road, if any injury is done in the course of making that road by the persons employed under its authority, it shall be responsible, in the same manner that an individual is responsible for the actions of his servants, touching his business. The act of the agent is the act of the principal. 'There is no solid ground for a distinction between contracts and torts.1 Indeed, with respect to torts, the opinion of the Courts seems to have been more uniform than with respect to contracts. For it may be shewn, that from the earliest times to the present, corporations have been held liable for torts. Many cases have been cited from the year books. Upon examination, they do not all answer the citations, but enough appears to shew that the law was so understood. In 4 Hen. 7. p. 13, pi. 11, we find an action of trespass against the Mayor and Commonalty of Tork, Plea, that all the inhabitants had a right of common in the land where the trespass is supposed to have been committed: held, not good, because the action is against the corporation, and the plea is a justification as to individuáis. In a subsequent part of this case, it is said that a corporation cannot give a warrant to commit a trespass without writing. • This, if it be. law. proves that a warrant may be given by writing, which is sufficient for the plaintiff’s purpose, the point being, whether a corporation can commit a trespass. In 8 Sen. 6. p. 1. pi. 11. and p. 14i.pl. 34, trespass was brought against the Mayor and Bailiffs, and Commonalty of Ipswich, and one f. yabez. It was objected, that a corporation and an indi *18 vidual cannot be joined in one action; but it was not object-that trespass does not lie against a corporation ; and the objection is said to have been overruled in 14 Hen. 8. 2. In the book of assises (31. Ass. pi. 19.) it appears that an assise °f novel disseisin was maintained against the Mayor and Commonalty of Winton. Brook lavs it down, that if the j a > Mayor and Commonalty disseise one who releases to several individuals of the corporation, this will not serve the Mayor and Commonalty, because the disseisin is in their corporate capacity. In the old books of entries are numerous precedents of writs of qucere impedit against corporations, and in Vidian3s Ent. 1. is a declaration in an action on the case, (16 Car. 2.) against the Mayor and Commonalty of the city of Canterbury, for a false return to a mandamus. To come to more modern times, it was held in the Mayor of Lynn, fife, (in error,) v. Turner, (Cowp. 86,) that an action on the case lies against a corporation for not cleansing, and keeping in repair, a stream of navigable water, which it was bound to do by prescription, in consequence of which the plaintiff was injured. This was in the year 1774, a little before our revolution. ' The laws of the Commonwealth forbid my tracing this point through the English Courts, since the revolution, but we shall find abundant authority in the Courts'of our own country. In Gray v. The Portland Bank, 6 Mass. Rep. 364, it is laid down, that the bank was responsible for wrongs done by itself or its agents. In Riddle v. The Proprietors of the Locks, &c. on Merrimack river. 7 Mass. Rep. 169, an action was maintained against the company for damage suffered by the plaintiff in consequence of the locks not being kept in repair. And in Townsend v. The Susquehana Turnpike Company, (6 Johns. 91,) an action was supported for the loss of a horse, killed by the falling of a bridge, which the company had built of bad materials. These authorities put it beyond doubt, that the form of action, in the present case, is good.
objection to the declaration remains to be considered. It is said, that the act of assembly, by which this company is chartered,gives them power to ereetbridges over all the streams which cross the road, and, therefore, they are not responsible for any damages which maybe suffered in consequence of these bridges. But this is too broad a proposition: for, granting that they would not be responsible for damages unavoidably *19 resulting from a bridge built in the best manner, and obstructing the passage of the water, no more than was necessa- | ry for its proper construction, it would not follow that they should not be answerable for damages arising from a bridge I so carelessly or inartificially built, as to occasion an unneces'sary and wanton obstruction. Now, the declaration alleges, that the defendants contriving, and wrongfully and injuriously intending to injure the plaintiff, &c. did wrongfully and unjustly set up certain piers, £s?c. So that we are bound, after verdict, to suppose that it was proved the defendants were in fault, in the manner of erecting the piers. To say, now, that they were guilty of no wrong, would be to declare that it is impossible for them to be made answerable for any injury which may arise from any kind of bridge, oj'.piers. This is going farther than I can permit myself to do,.being satisfied that the law never intended to authorise d a ni-ág e.; ■' jv i t h o u t necessity. Whether the company would be answerable for damages occasioned by a bridge or piers, of proper construction, is- a point of great importance, on which I give no opinion, as it does not arise in this case. I am of opinion, on the whole, that the judgment should be affirmed.
Judgment affirmed.