Judge Narton
delivered the opinion of the court.
The only question presented by this record, is whether the city of St. Louis is liable to an action for damages consequential upon the grading and paving of a street, directed by the city authorities in pursuance of an ordinance authorized by the city charter. The declaration in this case charged that the work was done so negligently that the water, which before the improvement of the street passed off by a natural channel, was thrown upon the plaintiff’s premises, and overflowed his cellars, and otherwise greatly impaired the value of his'building; but upon the trial, the court instructed the jury that the corporation was liable for the injury complained of, whether the grading of the street and the culvert constructed to carry off the water were properly made or not. So that the naked question is presented, whether the corporation is answerable in a civil action for consequential injuries of this charac*ter, however skilfully her agents may have executed the powers en^ trusted to them.
There is, no doubt, great difficulty in legislating so as always to secure a harmonious co-operation of private rights with public convenience, and it will prove a delusive expectation, to hope that any efficient municipal organization, either in states or cities, can be maintained, without an occasional restriction upon the enjoyment of private property. It has long since passed into a maxim, that the safety of the people is the supreme íaw, and as a corollary from this ancient truth, that individual convenience must yield to the public good. How far this principle may be extended, so as not to impair that enjoyment of private property which it is the duty of all just governments to protect, is a question which must be addressed td the political power in a government. The remedy for injuries sustained by acts of local municipal legislation is best obtained by a judicious limitation of the power thus entrusted to corporations, or by suitable provisions in the charter, for equitable compensation to the parties injured. It will be quite obvious, that if actions at law are sustained to adjust these questions, a wide door willlbe opened to speculation; litigation will be grealy increased, and the efficiency of municipal corporations very much impaired. It *419 can scarcely happen that streets and alleys in a city, where there are considerable inequalities of ground, can be constructed upon any uniform plan, without producing considerable inconvenience to the owners of lots adjacent to the streets or alleys so improved. The houses built upon high points of ground, must necessarily be left at an inconvenient elevation above the level of the street, and those built upon low ground be found partially covered up. If both these classes of lot owners can maintain their actions, the municipal corporation must be embarrassed by multiplied suits and heavy damages for the construction of works, which in all probability have been undertaken at the instance of the very persons who thus ask for redress. Moreover, if the damages which result from the improvement constitute a claim against the corporation, it would be nothing more than equitable that the advantages arising therefrom in the increased value of the lots should constitute a counter claim against the owner of the lot, and should to this extent form a set-off against the supposed injury. The difficulty of adjusting such questions, in an action at law, would seem to show the impolicy of such actions, and the greater necessity for providing for their settlement in a more convenient and less expensive mode. Our impression is, that such actions as the present cannot be maintained» The distinction taken by the counsel in the argument of this case between the acts of municipal corporations in the discharge of such legislative functions as have been delegated to them by the State, and those acts which are done by mere private corporations or by municipal corporations, in the prosecution of a mere private enterprise, we take to be a sound one. Where a municipal corporation engages, in an undertaking, having no reference to her municipal duties, or the interests of the public at large, but merely for her private emolument or convenience, she is then upon the same foot with any individual or private corporation* and is unquestionably answerable for her acts precisely to the. same extent that an individual would be. Tliis distinction has been recognised by the adjudged cases to which we shall hereafter advert. At present we shall only observe that the act complained of in this case was clearly one of those done in pursuance of a power vested by the charter in the city of Saint Louis for public purposes. If the city corporation be liable to such actions, the State would be equally liable for similar acts, if the Legislature, in pursuance of the constitution, had provided a mode of sueing the State.
If a fqrt or arsenal be erected upon public ground', but so near to a private dwelling house as greatly to impair its value, no action lies against the State. 4 Term R. 794. If a public road be constructed, *420 the proprietor of an adjoining house, who is injured consequentially, js without remedy, unless the injury be of sucha character as comes within the constitutional restriction against taking private property for public use without compensation, or has been expressly provided for by law. A dwelling house in the country may be situated so near to a rail road constructed by the State as to render it unfit for inhabitation, yet it cannot be pretended that the owner could maintain an action against the State for damages. It would doubtless be good policy to provide in the act authorising the public work, for a compensation to individual citizens for injuries produced in this indirect mode, by the construction of the yoad or canal, but if no such provision is made, the loss of the citizen would be damnum absque injuria, No public work could be constructed, however important to the great interests of the community it might be, without being a source of endless litigation, if it be held that remote and consequential damages will lay the foundation of an action at law against the State ; and a municipal corporation in discharging a portion of the legislative power entrusted to it for public purposes, will occupy the same ground as the State, and its irresponsibility in such cases de-, pends upon the same principles.
The question we have been considering is not a new one, and we are not without authority, both in England and in several of our sister States, fully sustaining the position we have assumed.
In Wilson vs. Mayor, &c., of New York, (1 Denio 597) the action was very similar to the present. The plaintiffs sued the city of New York, for so carelessly grading and paving a street, that the water was prevented from flowing off from the plaintiff’s premises, and for omitting to construct a drain or sewer by which the water could be carried off. The court held that the action would not lie. They considered the corporation of the city as not responsible for damages occasioned by the construction of works of this character, which the charter of the city expressly authorized them to make, and that, although it was the duty of the city authorities to build the sewer or drain, the want of which was camplained of, yet for a neglect qf this duty the corporation was not responsible in a civil action.
The case of Mayor of New York vs. Bailey, (2 Denio 433) which was determined in the court of errors about the same time with the de-. cisión of the supreme court in Wilson vs. Mayor, &c., we do not understand as at all conflicting with the principles determined in the latterpase. The court of errors held, as the supreme court had held pre-, yiously, that the corporation of New York was liable for the negligence *421 and unskilfulness of its agents, in so constructing a da.m across the Croton riyer, where that stream is diverted for the purpose of' supplying the city with water, that a freshet swept away the dam and with it the buildings and other property of the plaintiff, situated on the stream below the dam. The liability of the city in a case of this sort, supposing that the work had been, b.uilt under the superintendence of its own officers, was not questioned, Jt was a case where the municipal corporation engaged in. a private enterpirse. Although the work was undoubtedly, to some extent, a great benefit to the community at large, yet it was not properly undertaken by the city in its municipal character, but as a mere private corporation for the sole convenience and benefit of the corporate body. A corporation may be authorised to engage in works of this description ; and when it does so, it is responsible to the same extent as an individual. It is no longer exercising a portion of the sovereign power which has been delegated to it for municipal purposes. The court of errors therefore held, that this corporation, though not liable for acts requiring the exercise of discretion, when those acts are for the benefit of the public, yet was liable for the acts of the agents it voluntarily employed to do business for its own private benefit, the same as any other corporation or individual.
The principal difficulty in that case arose out of the fact that the commissioners appointed to superintend the erection of the work were appointed by the legislature of New York and not by the city ; and it was-upon this ground mainly that the case was contested and gave rise to> some difference of opinion among the members, of the court. This point however has no bearing upon the subject now under consideration.
In Pennsylvania the liability of' municipal corporations in cases like the present, has been considered by the courts, and their repeated adjudications are against the liability of the corporations. In Green vs. The Borough of Reading, (9 Watts 382) the action was brought by a citizen of the Borough to recover damages against the corporation for filling up the street in. front of his house, whereby he lost the use of an alley, and the use and occupation of his house and lot. The court held, that the action would not lie; that the corporation, having the power by charter to pass ordinances for improving the streets, was not responsible for exercising that power, although it might produce temporary inconvenience to individuals.
The same doctrine was fully recognised by the supreme court of Pennsylvania in the case of Mayor, &c. vs. Randolph, (4 Watts & Terg 516.) This was an action against the city corporation of Philadelphia *422 for causing a lot belonging to the plaintiffs to be áverflowed by stopping up a water course, which had been previously drained off by some natural channel, and the court held, that the action would not lie, although the obstruction complained of in this case was produced by the city in an attempt to improve their own private property. The court, however, declared that the only question was, whether the city had authority for making the improvement, and refused to permit any enquiry into the purposes which might have been i,n contemplation in making such improvement. Whether the principle thus asserted would not conflict with the doctrine maintained in the case of the Mayor, &c. vs. Bailey, (2 Denio 433) is not material to be considered, as the case is only cited in support of the general position heretofore taken, and it will not weaken the force of the decision that the court carried the general principle to an unwarrantable extent in applying it to the facts of that case.
In Massachusetts the same general principle is distinctly recognised in the case of Callender vs. Marsh, (1 Pick. 418) and strongly enforced and illustrated by argument and authority. That was an action against a surveyor of the highway for digging dovm the streets by the plaintiff’s dwelling house, and taking away the earth, so as to lay bare the foundation1 walls of the house, and endanger its falling; in consequence of which the plaintiff was obliged, at great expense, to build up new walls, and otherwise secure his home. After determining the question that the surveyor, under the laws of that State, had power and authority to dig down streets, about which question there was much discussion, the court held that the surveyor was not liable, unless indeed his acts, were ihe result of a malicious and wanton exercise of power. They declare that a person cannot be liable to an action as for a tort, for an act which he is authorised by law to do. It is manifest that there is no principle upon which the surveyor of roads in that S'tate could be exempted from responsibility for an act done in pursuance of law, which would not have applied to a municipal corporation, had the same duties been entrusted to it.
The case of Thayer vs. city of Boston, (16th Pick. Rep.) merely decided that the city corporation was liable to an action on the case for acts done by its authority, it being conceded that the acts done were illegal and wrongful.
• The case of Goodloe vs. city of Cincinnati, (4 Ohio R. 600) has been supposed to be an authority in support of the doctrine that corporations in cases of consequential damage are liable to actions on the case,. The opinion of the court in that case is very brief, and see«ns *423 merely to maintain the doctrine that municipal corporations are liable to-actions on the case for damages consequential upon illegal and malicious acts of their officers, such illegal and malicious acts having been authorised by the corporation. The question in that case came up on a demurrer to a declaration, and although the liability of municipal corporations in such cases upon general principles was largely and ably discussed by the counsel, the decision of the court was confined to very narrow grounds. “All corporations,” say the court, “act by agencies, and those agencies are composed of men who may be influenced by reprehensible motives, or tempted to do acts not warranted by law. In this case the act is charged in the declaration to have been illegal and malicious.When a corporation acts illegally and maliciously, we conceive it ought to be made directly responsible. Such is the plain dictate, of justice, and we see no technical rule of law that forbids us to act upon it.” It will be obvious tiiat this opinion does not touch the present case; that it has no application to the question wjiere the corporation is admitted to have done an act which the law authorised, and where the act is done for public benefit, and in the discharge of functions purely municipal. The distinction between municipal corporations and private corporations or individuals is not adverted to; and the whole case seems to have turned upon a question, at that time much discussed in courts, whether corporations could be sued at all in actions of tort.
The case of Rhodes vs. city of Cleveland (10 Ohio Rep. 159) is still more unsatisfactory. The facts of the case are not stated, but the court maintain the responsibility of the corporation in the most unqualified terms. “If an individual” say the court, “exercising his lawful powers commit an injury, the action on the case is the familiar remedy: if a corporation, acting within the scope of its authority, should work wrong to another, the same principle of ethics demands of them, to repair it, and no reason occurs to the court, why the same remedy should not be applied to compel justice from them.” Upon this reasoning the court came to the conclusion, that “justice and good morals required that a corporation should repair a consequential injury, which ensues from the exercise of its functions.” Whatever may be thought of the moral obligation resting upon a municipal corporation or a State to redress injuries to individuals occasioned by an exercise of lawful and constitutional power, the question to be determined is, whether upon principles of law there is a liability in such cases to an action, and in determining the question it is manifest that the supreme court of Ohio, did not advert at all to the distinction between the liabilities *424 ■of individuals and those of a State or municipal Corporation. That such a distinction had been taken in all the English CaSes, seems to be conceded} and I am aware of nothing in the policy of our form of government to prevent its application here. The decisions in New York, Pennsylvania, and Massachusetts, we hav'e seen, are in conformity to this principle, and the supreme court of the United States in Gossley vs. Corporation of Georgetown (6 Wheat. 593) indirectly -sanction th© same principle.
In the case of the governor See. vs. Meredith and others, (4 D. & G. 794,) it was held, that where an act of parliament authorized commissioners to pave, by re&s'ó& of which an individual was injured in his property, and there was no excess of jurisdiction oh the part of the commissioners, neither they nor their servants were liable for such acts. The same point was determined in Sutton vs. Clark (6 Taun. 42) and Harman vS. Tappenden (1 East. 555.)
A question has been suggested, although it does h'C't arise here, Whether a wanton and malicious or negligent and unskillful exerbiSe of powers belonging to a corporation, would not render the corporation liable. That the agents of a municipal corporation rvbuld be responsible for Wanton and malicious injuries to individuals, under the pretext of discharging duties imposed on them by law, cannot be doubted, and Under Certain Circumstances} the corporation who appoints them will be equally liable. Harman vs. Tappenden 1 East. 555; Chesnut H. Co. &c. vs. Rutler 4 Serg. & Rawle 6 ; 3 Wils. 561. Such acts, from their very nature, must be either the assumption of powers not granted by law} or the abuse of Such as have been granted, and are therefore o longer within the protection of the general principle.
Judgment reversed*